IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN LEE WALKER, | § | |
| TDCJ-CID No. 1588096, | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2112 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

This habeas case, concerning the validity of a state court judgment and filed pursuant to 22 U.S.C. § 2254, is before the Court on Respondent William Stephens' ("Respondent") Answer [Doc. # 9], filed January 2, 2014, seeking dismissal of the Petition for a Writ of Habeas Corpus filed by Petitioner Steven Lee Walker ("Walker"). The Court construed the answer to be a motion for summary judgment and ordered Walker to file a response [Doc. # 12]. Walker has filed a response [Doc. # 13]. After considering the parties' pleadings, the evidence of record, and the applicable law, the Court denies the petition, and dismisses this case.

## I.    BACKGROUND

### A.    State Court Procedural History

On July 24, 2008, a Montgomery County grand jury indicted Walker for driving while intoxicated, a felony offense because he had two prior convictions for driving while intoxicated.   Indictment [Doc. # 7-7 at 24-25; Doc. # 7-16 at 8-9].   The indictment further alleged that Walker had four additional driving while intoxicated convictions.  *Id.*   After being tried by a jury, Walker was found guilty of "Driving While Intoxicated" . . .  3rd Degree enhanced to Habitual Felony Offender." Judgment of Conviction by Jury [Doc. # 7-7 at 26; Doc. # 7-16 at 36].   Walker entered a plea of true to the enhancements and elected to have the trial court assess punishment.  *Id.*   After hearing the evidence, the court found the enhancement paragraphs to be true and sentenced Walker to twenty-five years incarceration in TDCJ. *Id.*

Walker appealed the trial court's judgment which was affirmed by the Court of Appeals for the Ninth District of Texas on June 23, 2010.  *Walker v. State*, No. 09-09-00338-CR, 2010 WL 2533774 (Tex. App. – Beaumont 2010, pet. ref'd).  The Texas Court of Criminal Appeals ("TCCA") refused Walker's petition for discretionary review ("PDR") on November 10, 2010.  *Walker*, PD-0959-10 (Tex. Crim. App.) [Doc. # 7-9 at 23].

Walker filed a state application for writ of habeas corpus, pursuant to Article

11.07 of the Texas Code of Criminal Procedure, on May 3, 2011.  State Habeas Record ("SHR") [Doc. # 7-5 at 18] .[1]  On March 20, 2013, the trial court entered its Findings of Fact and Conclusions of Law and recommended that relief be denied.  The court further found no issues requiring an evidentiary hearing and ordered that state district clerk forward the record to the TCCA.  *Id.*  The TCCA denied the application without a written order on April 24, 2013.  *Ex parte Walker*, No. 78,756-03; [Doc. # 7-5 at 2].

### B.    Facts Established at Trial

The state alleged that on or about May 23, 2008, Walker operated a motor vehicle in a public place while intoxicated.  Indictment [Doc. # 7-7 at 24].  The Ninth Court of Appeals described the events as follows:

> After noticing a truck being driven rather erratically, including swerving into a ditch and hitting mailboxes, R.V.[2] noted the truck's license plate number and then backed up to the first damaged mailbox. Walker also returned to the mailbox where R.V. had parked. Walker then stepped from the driver's side of his truck and asked R .V. what he was doing. R.V. noticed that Walker had doubled his fist, staggered, slurred his speech, and smelled of alcohol. Walker told R.V. that if he wanted trouble, he had come to the right place. Walker then drove off and pulled

---

[1]    *See Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013) (State prisoner's habeas application is considered filed at the time the he "turned the application over to prison authorities to be filed.").

[2]    For purposes of the appeal, the Ninth Court of Appeals referred to the State's witness by his initials.

into what R.V. thought was a driveway. At that point, R.V. "dialed 911."

Sergeant Eric Ward with the Montgomery County Sheriff's Office was sent in response to R.V.'s call. When Sergeant Ward approached the scene, he noticed a truck parked partially in a driveway and partially in the roadway. Sergeant Ward approached the truck and saw Walker sitting in the driver's seat with the keys in the ignition. Sergeant Ward requested Walker step out of the truck. At first, Walker did not cooperate, but then Walker finally exited the truck. Sergeant Ward noticed that Walker smelled of alcohol, had bloodshot eyes, and swayed as he stood.

Deputy Tom Thompson arrived a short time after Sergeant Ward had been sent to the scene. When Deputy Thompson arrived, he noticed that Walker smelled of alcohol; had bloodshot, glassy eyes; and that Walker was "very unstable on his feet." After speaking with R.V., Deputy Thompson conducted field sobriety tests. According to Deputy Thompson, the field sobriety tests revealed several clues that Walker was intoxicated. Deputy Thompson noticed scratches on Walker's truck "where he had hit the mailboxes." Deputy Thompson also noticed some knocked down mailboxes. After completing the field sobriety tests, Deputy Thompson arrested Walker for driving while intoxicated.

Following his arrest, Walker took a breath test; at trial, Walker stipulated that the results showed Walker's blood alcohol concentration at 0.123. According to Deputy Thompson, Walker told him that he was driving the truck, and that he was under the influence of alcohol.

During the trial, and to impeach R.V.'s credibility, Walker offered evidence to show that R.V. had three prior criminal convictions, two for burglary of a building and one for criminal trespass. The three convictions, dated 1985, 1986, and 1988, each occurred more than ten years prior to the trial. The trial court refused to admit the convictions. Walker re-urged his request after the State recalled R.V., but the trial court again refused to allow him to introduce evidence about R.V.'s prior criminal record.

We abated the appeal to allow the trial court to clarify the evidence that it had decided to exclude. After a hearing, the trial court supplemented the reporter's record with copies of judgments of the convictions at issue, as well as with a copy of a civil judgment against R.V. for failure to pay his child support. During Walker's trial, the trial court had also excluded evidence showing that R.V. had been held in contempt of court for failing to pay his child support.

*Walker v. State*, 2010 WL 2533774, **1-2 (Tex. App.-Beaumont, 2010).

## C.   The Federal Habeas Petition's Claims

Walker filed the pending habeas petition with the Court on July 17, 2013 [Doc.

# 1 at 10].[3]  He asserts the following claims:

1.   Walker was denied effective assistance of counsel because his attorney failed to:

   a.   present Robbie Vercher's [RV] contempt of court conviction;

   b.   protect and perfect the record;

   c.   object to retrograde extrapolation testimony and accompanying video;

   d.   object to the prosecution's comment on his failure to call certain witnesses; and

   e.   investigate alibi witnesses.

2.   The trial court erred by:

---

[3]   *Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir.1998) (prison mailbox rule).

a.      failing to preserve material exculpatory evidence;

b.      allowing Deputy Thompson's testimony regarding the field
sobriety tests and accompanying video; and

c.      allowing the jury to see Walker in handcuffs.

3.      Walker's appellate counsel rendered ineffective assistance by failing to
raise issues on appeal that would afford relief.

4.      Walker is entitled to relief under the cumulative error doctrine..

Petition [Doc. # 1 at 6-7]; Petitioner's Memorandum [Doc. # 2 at 1-9].

## II.    <u>LEGAL STANDARD</u>

Generally, motions for summary judgment are governed by Rule 56 of the

Federal Rules of Civil Procedure.  However, the respondent's motion for summary

judgment must be analyzed in light of federal habeas corpus statutes. *Smith v.*

*Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  All federal habeas corpus proceedings

filed after April 24, 1996 are governed by 28 U.S.C. § 2254 of the Antiterrorism and

Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

*See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For claims containing both legal and factual questions, a federal court may not

issue a writ of habeas corpus unless the adjudication in state court resulted in a

holding that "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."

28 U.S.C. § 2254(d)(1); *see Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). A state court's decision is contrary to clearly established federal law if it reaches a legal conclusion that directly conflicts with a prior holding of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *see also Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. Tex. 2006). A state court unreasonably applies clearly established federal law if it correctly identifies the governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *see also Nelson*, 472 F.3d at 292.

The Supreme Court recently clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). All of the state court's findings of fact "are 'presumed to be correct' unless the petitioner rebuts this presumption through 'clear and convincing evidence.'" *Nelson*, 472 F.3d at 292. Additionally, "all credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Drake*, 398 F.3d 691, 695 (5th Cir. 2005) (quoting *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)). When a dispute is purely factual, a petitioner is not entitled to relief unless he proves that the state court's decision was

"based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008) (quoting 28 U.S.C. § 2254(d)(2)).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable – a substantially higher threshold."  *Id*. (citing *Williams*, 529 U.S. at 410).

A central goal of the AEDPA is to limit the "federal [habeas] court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Harrington*, 131 S. Ct. at 786.

Courts construe pleadings filed by individuals proceeding *pro se* under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Pleadings filed by *pro se* litigants are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  "At the same time, however, mere conclusory

allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.   <u>ANALYSIS</u>

### A.   **No Showing of Denial of Effective Assistance of Trial Counsel**

Walker contends that he was denied effective assistance of counsel because his trial attorney: (1) failed to present Robbie Vercher's contempt of court conviction; (2) failed to protect and perfect the record; (3) failed to object to retrograde extrapolation testimony and accompanying video [Doc. # 2 at 1-2]; (4) failed to object to the prosecution's comment on his failure to call certain witnesses [Doc. # 2 at 2]; and (5) failed to investigate an alibi witness, Jim Wheat [Doc. # 2 at 1, 3].

***Standard for Ineffective Assistance of Counsel.***  The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. U.S. Const. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771

n.14 (1970) (emphasis added).   Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.   *See Williams*, 529 U.S. at 390-91. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."   *Strickland*, 466 U.S. at 687.   The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   *Id.* at 689.   To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*

"Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)." *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012).  The petitioner has the burden of proving that his lawyer was ineffective.  *Id.*; *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).  Further, the petitioner must show that the state court's determination that the petitioner failed to make a *Strickland* showing was contrary to or an unreasonable application of the *Strickland*  standard. *Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir. 2011) (citing *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).  Judicial review of  an attorney's performance is 'highly deferential' with a strong presumption that his performance was adequate. *McAfee v. Thaler*, 630 F.3d 383, 394 (5th Cir. 2011).  Consequently, it is difficult to surmount *Strickland's* bar because the petitioner cannot accomplish this if there is "any reasonable argument that the petitioner's counsel satisfied *Strickland's* deferential standard."  *Harrington*, 131 S.Ct. at 788.

**State Habeas Court Findings**.  Walker asserted the following claims in his state application for a writ of habeas corpus:

1.    Walker was denied effective assistance of counsel because his attorney failed to:

    a.    present Robbie Vercher's 2006 contempt of court order for failure to pay child support;

      b.     protect and perfect the record on the trial court's denial of admissibility of prior convictions to impeach a State's witness;

      c.     object to the State's expert testimony on retrograde extrapolation evidence;

      d.     object to the prosecution's comment on his right to remain silent and call certain witnesses; and

      e.     investigate alibi witnesses.

2.     Walker's appellate counsel rendered ineffective assistance by failing to raise issues on appeal that would afford relief.

3.     The trial court erred by:

      a.     allowing the destruction before trial of a video that contained exculpatory evidence;

      b.     allowing the jury to see a video depicting Walker restrained in handcuffs; and

      c.     allowing Deputy Thompson's testimony regarding the field sobriety tests and accompanying video.

4.     Walker is entitled to relief under the cumulative error doctrine.

State Application for a Writ of Habeas Corpus [Doc. # 7-5 at 13-16].

Upon receiving Walker's state application for a writ of habeas corpus, the trial court found that it was necessary to make a factual finding as to whether Walker was denied effective assistance of trial counsel [Doc. # 7-6 at 19]. Pursuant to this finding, the trial court ordered Walker's trial attorney, Bert Steinmann, to answer the following specific questions:

1.      In conducting an investigation before trial, did you interview the passenger in the vehicle driven by the applicant, an individual by the name of Jim Wheat, regarding his potential testimony?

2.      If not, why did you determine that an interview of that individual was unnecessary?

3.      If you did interview Jim Wheat, why did you determine that calling him as a witness would not have benefitted the applicant's defense?

Order, dated May 31, 2011 [Doc. # 7-6 at 20] ("Designation of Issues").

Steinmann submitted the following affidavit in response to the trial court's

order:

My name is Bert Steinmann.  I am above the age of eighteen years, and I am fully competent to make this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

1.      There was no passenger in the vehicle.  Defendant's parrot was in the vehicle.  We subpoenaed the parrot and had him brought to court and presented as evidence.  We brought a parrot expert to testify on behalf of the Defendant that a parrot of this size would indeed cause a distraction that could cause someone to have difficulty driving.  We were unable to get the parrot to corroborate the Defendant's story or testify on his behalf.[4]

2.      A formal interview of Mr. Wheat was would [sic] be unnecessary because he was not in the vehicle and not an alibi witness.  Our client never mentioned having a passenger before or during trial other than the aforementioned parrot.  We did go door to door

---

[4]      Steinmann's response appears to be factually inaccurate.  State's witness Sergeant Eric Ward of the Montgomery County Sheriff's Office testified at trial that Walker had a passenger with him, and that there was some sort of large bird in his vehicle, when he was arrested [Doc. # 7-22 at 67, 80-82].

down defendant's street and talked to at least a half dozen or more witnesses. We hired a private detective to do the same. We brought a Spanish speaking associate with us so we could speak to the witnesses the police did not because of the language barrier.

3.      None of the witnesses testimony would have helped Defendant's case, in fact, based on our investigation, any witness testimony could have strengthened the State's case beyond having one witness to his alleged actions.

Affidavit of Steinmann [Doc. # 7-6 at 21-22].

The purported alibi witness, Jim Wheat, also submitted an affidavit which reads as follows:

To whom it may concern:

I, James Wheat, was on the way home from work. We stopped at the corner store & bought some Bar-B-Q & beer. On the way home, Steven hit a mans [sic] mailbox. The man was outside. Steven turned around an [sic] the man said the mailbox was fine. So we went on home & pulled in the driveway. We were sitting on the tailgate waiting on our friends to come eat Bar-B-Q. Then two Sherrifs Dept. [sic] cars pulled up. One of the Sherriffs [sic] told me to go home. I called Norma Mize to come pick me up. When she got there the Sherriff told her to pull the truck on up in the driveway. That was it & I went home.

[written by Norma Mize]                    [signed by James Wheat]

Affidavit of Wheat [Doc. # 7-6, p. 35]

After reviewing Steinmann's response, Wheat's affidavit, and the trial court's record, the state trial court entered a Findings of Fact and Conclusions of Law which included the following:

3.   The Court is familiar with the performance of the applicant's attorney, Bert Steinmann, who has long practiced in the courts of Montgomery County and is well qualified to serve as trial counsel in criminal cases.

4.   Steinmann submitted a credible affidavit in answer to the applicant's claims of deficient performance, but Steinmann was mistaken about the presence of a passenger in the vehicle.

5.   Steinmann presented the Court with evidence of Robbie Vercher's contempt conviction during trial, and the applicant's assertion to the contrary is not credible and is not supported by the record.

6.   Steinmann perfected the record regarding the admissibility of Vercher's prior convictions, and that claim was reviewed by the 9th Court of Appeals. The exclusion of Vercher's 21, 22, and 24 year old convictions was proper. The applicant's assertions are not credible.

7.   Steinmann objected to numerous questions related to retrograde extrapolation testimony, and, as a result, no retrograde extrapolation testimony was admitted in the applicant's trial. The applicant's assertions are not credible and are not supported by the record.

8.   Steinmann objected to the State's comment on the applicant's lack of corroborating witnesses. The State did not make an impermissible comment on the applicant's right to remain silent. The applicant's assertions to the contrary are not credible and are not supported by the record.

9.   Steinmann conducted a thorough investigation and interviewed numerous potential witnesses, but did not interview Jim Wheat.

10.   Jim Wheat's testimony is consistent with the testimony of the State's Witness, Robbie Vercher, and materially contradicts the applicant's recollection of the facts leading up to his arrest.

11.   The video from Sergeant Ward's car did not contain clearly exculpatory evidence, and the video was not destroyed in bad faith.

12.   The jury never viewed the portion of the video showing the applicant in handcuffs.  The applicant's assertions to the contrary are not credible.

13.   Deputy Thompson did not testify to the results of the HGN [field sobriety] test.

## CONCLUSIONS OF LAW

1.   There remain no material, previously unresolved issues of fact material to the legality of the applicant's conviction and sentence; and there being ample evidence in the record for the Court to rule on the relief sought, an evidentiary hearing is not required.

2.   The applicant has failed to prove by a preponderance of the evidence that was denied his right to the effective assistance of counsel at trial or on appeal.  *See Strickland v. Washington*, 466 U.S. 668, 669 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

3.   Jim Wheat's testimony, as presented by the applicant, does not create a reasonable probability that the outcome would have been different if counsel had interviewed Wheat or called him as a witness at trial.  *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).

4.   The applicant's claims of trial court error are not cognizable in a writ of habeas corpus.  *See Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

5.   The cumulative error doctrine does not apply because applicant has failed to prove that error occurred.  *See Chamberlaine v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999).

[Doc. # 7-7 at 17-18]

***Uncalled Alibi Witness.*** The Court first examines Walker's claim that Steinmann was ineffective in failing to interview an alibi witness who was Walker's passenger at the time of the incident. The state district court ordered Steinmann to respond to Walker's allegation that he failed to interview Jim Wheat, the alleged alibi witness [Doc. # 7-6 at 20]. Steinmann answered by denying knowledge of Wheat or any passenger and instead made reference to a parrot that Walker apparently had with him in the vehicle [Doc. # 7-6 at 21-22]. Contrary to Steinmann's assertion, the trial court's record shows that there was a passenger in Walker's vehicle. *See* Trial Transcript [Doc. # 7-22 at 67]. Despite Steinmann's misinformed response, the state court determined from Wheat's affidavit that his testimony would not have been helpful to Walker's defense. The state court's factual determinations are presumed correct unless the petitioner rebuts them by clear and convincing evidence. *Wood v. Allen*, 558 U.S. 290, 293 (2010); *Register v. Thaler*, 681 F.3d 623, 629 (5th Cir. 2012).

Federal review does not favor complaints of uncalled witnesses "because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). "[T]o prevail on an ineffective assistance claim based

on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman,* 265 F. App'x 296, 298 (5th Cir. 2008)).

Regardless of whether Steinmann's performance may have been deficient, Walker is not entitled to relief without showing that Steinmann's performance prejudiced his defense. *See Brawner v. Epps*, 439 F. App'x 396, 403 (5th Cir. 2011) (citing *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995); *Hooks v. Thaler*, 394 F. App'x 79, 82 (5th Cir. 2010) (citing *Strickland*, 466 U.S. at 697). Wheat's affidavit verifies his presence during the incident and affirms Vercher's statement that Walker knocked over least one mailbox. It attests to the fact that Walker purchased beer after he picked up Wheat and before Walker was arrested for DWI. There is nothing in Wheat's statement indicating that Walker was not intoxicated when the officers from the Montgomery County Sheriff's Department encountered him. It only supports Vercher's testimony that Walker was driving so erratically that he struck a mailbox with his vehicle. Moreover, it does not express that Wheat was available or willing to testify at Walker's trial. Wheat's statement does not provide evidence that he would have been able to give helpful testimony at Walker's trial and therefore

Steinmann's failure to interview him did not prejudice Walker's defense.  *Hooks*, 394 F. App'x at 83 (citing *Day*, 566 F.3d at 538; *Woodfox*, 609 F.3d at 808).

Walker submitted a second affidavit from Wheat, entitled "New Testimony from Alibi Witness," stating that he and Walker consumed four or five beers each during the 45 minute interval between their encounter with Vercher and the arrival of the sheriff's officers [Doc. # 2 at 10].  The undated affidavit was not submitted with the state habeas application and was not reviewed by the state courts.  Federal habeas review of a state court conviction is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012) (citing *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011)).  Consequently, the new affidavit may not be considered in this proceeding.  *Id.* (citing *Pinholster*, 131 S.Ct. at 1400).  The state court's factual findings are presumed correct and its determination that Wheat's testimony would not have helped Walker's defense is not contrary to clearly established Supreme Court precedent.  *See Vasquez v. Thaler*, 505 F. App'x 319, 327 (5th Cir. 2013).  Therefore, Walker is not entitled to relief based on his argument that Steinmann was ineffective in failing to investigate Wheat as a witness.

**Robbie Vercher's Contempt of Court Conviction.**  Walker alleges that Steinmann provided ineffective assistance of counsel by failing to present Vercher's

conviction for contempt of court [Doc. # 1 at 6; Doc. # 7-5 at 13].   Contrary to Walker's allegation, the state court found that Steinmann informed the trial court that he would submit Vercher's prior convictions and contempt of court judgments to the jury for impeachment purposes [Doc. # 7-21 at 16].   During Vercher's testimony, Steinmann approached the bench about going into Vercher's three prior convictions for burglary [Doc. # 7-22 at 27].   After hearing the arguments, the trial court ruled that Vercher's prior felony convictions, which occurred more than 20 twenty years before Walker's trial, were inadmissible.   *Id.* at 29.   On cross-examination, Steinmann asked Vercher if he had been held in criminal contempt of court.   *Id.* at 37.   The prosecution objected and the trial court ruled that conviction was inadmissible as irrelevant.   *Id.* at 37-38.   Contrary to Walker's allegation, the state court's factual determination is sufficiently supported in finding that Steinmann had presented the trial court with evidence of Vercher's contempt conviction.   *Register*, 681 F.3d at 623.

**_Failure to Perfect Record_.**   Walker contends that Steinmann was ineffective by failing to perfect the record on appeal regarding Vercher's prior felony convictions [Doc. # 1 at 6; Doc. # 7-5 at 13].   The trial court noted in its Findings of Fact and Conclusions of Law that Steinmann perfected the record regarding the admissibility of Vercher's prior convictions, and that claim was reviewed by the Ninth Court of Appeals.   *See Walker*, 2010 WL 2533774, *3.   The Court of Appeals ruled that the

prior convictions were too remote in time to be admissible.  *Id.*  The Court further noted that there was corroborating testimony from other witnesses regarding Walker's intoxication and erratic driving.  *Id.*  Walker fails to rebut the respondent's showing that Steinmann perfected the record for appeal with regard to Vercher's prior convictions.  *See Wood*, 558 U.S. at 293.  Further, there is no indication that Walker would have been prejudiced if he had failed to perfect the record in the respects claimed.  The state court's finding is supported by the record and its conclusion is not an unreasonable application of federal law.

*Failure to Object*.  Walker alleges that Steinmann was ineffective by failing object to retrograde extrapolation[5] testimony and evidence.  Walker also alleges that Steinmann failed to object to the prosecution's comment on his failure to call certain witnesses [Doc. # 1 at 6].  The trial court noted in its Findings of Fact and Conclusions of Law that Steinmann objected to numerous questions related to retrograde testimony and, as a result, no retrograde testimony was admitted at trial [Doc. # 7-7 at 17].  The court also found that Steinmann did object to the prosecution's comment on his right to remain silent and call certain witnesses.  *Id.*       The trial transcript reflects that

---

[5]     Retrograde extrapolation is the "computation back in time of the blood-alcohol level—that is, the estimation of the level [of blood alcohol concentration] at the time of driving based on a test result from some later time."  *Garcia v. State*, 112 S.W.3d 839, 849 (Tex. App.–Houston [14th Dist.], 2003).

Steinmann made numerous, and often successful, objections to the State's expert witness testimony regarding retrograde extrapolation [Doc. # 7-24 at 77-80; Doc. # 7-25 at 1-21].   Steinmann also conducted a vigorous cross-examination of the same State expert witness [Doc. # 7-25 at 21-30] and there is no retrograde extrapolation testimony in the record.   The trial transcript also reflects that Steinmann made an objection in response to the prosecution's comment on his failure to call certain witnesses [Doc. # 7-26 at 174-175].   Steinmann argued that the defendant did not have the burden of putting on witnesses or evidence, and the trial court sustained the objection. *Id.*

Walker has failed to meet his burden in proving that his attorney was ineffective. *See Clark*, 673 F.3d at 416; *Galvan*, 293 F.3d at 764.   Further, he has not shown that the state court's determination that he failed to make a *Strickland* showing was contrary to or an unreasonable application of the *Strickland* standard. *See Charles*, 629 F.3d at 501.   Therefore, he is not entitled to relief on his claim that he was denied effective assistance of counsel at trial. *Harrington*, 131 S.Ct. at 788.

### B.    Claims of Trial Court Error are Procedurally Barred

Walker contends that the trial court erred by: (1) allowing the destruction before trial of a video that contained exculpatory evidence; (2) allowing the jury to see a video depicting Walker restrained in handcuffs; and (3) allowing Deputy Thompson's

testimony regarding the field sobriety tests and accompanying video.  Respondent argues that the claims are procedurally barred.  Respondent also contends that the claims have no merit.

Under 28 U.S.C. § 2254(b), a petitioner is required to exhaust available state procedures before he may pursue habeas relief in the federal courts.  *See Wion v. Quarterman*, 567 F.3d 146, 148 (5th Cir. 2009) (citing *Orman v. Cain,* 228 F.3d 616, 619-20 (5th Cir. 2000)).  All claims must be presented to and reviewed by the state courts before a federal habeas petition can be filed in the federal courts.  *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999).  Generally, this requires a Texas prisoner challenging his state custody to present his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review or in a state application for a writ of habeas corpus filed pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  *See Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990).  The fact that a claim has "been through" the state court system is not enough to satisfy the exhaustion requirement; the highest court must have a reasonable opportunity to consider the merits of each of the claims presented in a federal habeas petition.  *Picard v. Connor* 404 U.S. 270, 276-77 (1971); *see also Baldwin v. Reese,* 541 U.S. 27, 29 (2004) ("To provide the State with the necessary opportunity, the prisoner must fairly

present his claim in each appropriate state court . . . ." (quotation marks and citations omitted)).

When the state court dismisses a claim on procedural grounds, the claim is procedurally barred from review by the federal courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). "[F]ederal courts are precluded from granting habeas relief where the last state court to consider the claims raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state-law procedural ground." *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012) (citing *Walker v. Martin,* 131 S.Ct. 1120, 1127–1128 (2011); *Beard v. Kindler,* 130 S.Ct. 612, 617–618 (2009).

In the Texas state courts, some claims may only be presented in a writ of habeas corpus and not on direct appeal.  *See e.g.*, *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (general claims of ineffective assistance of counsel may not be raised on direct appeal); *Robinson v. State,* 16 S.W.3d 808, 809–10 (Tex. Crim. App. 2000).  Other claims, such as trial court error, must be raised on direct appeal

and are barred from consideration in a state habeas post-conviction challenge.  *See Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

In entering its Conclusions of Law, the state habeas court found that Walker's "claims of trial court error are not cognizable in a writ of habeas corpus."  [Doc. # 7-7 at 18].  In Texas, matters that should have been raised on direct appeal may not be litigated on habeas review.  *Townsend*, 137 S.W.3d at 81; *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989).   The Fifth Circuit has recognized that this state rule is adequate to bar federal habeas corpus review.  *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007); *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006).   Walker's claims of trial court error could have been raised on direct appeal, and therefore, are barred from consideration in a state habeas corpus proceeding.  *Townsend*, 137 S.W.3d at 81.  Because the claims were barred from consideration on state habeas review they are procedurally barred from federal habeas review.  *Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007) (citing *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)).

Walker may only overcome his procedural default by demonstrating cause and prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice.  *Morris v. Dretke*, 413 F.3d 484, 491-92 (5th Cir. 2005).  Cause

is demonstrated by establishing that some objective external factor impeded his efforts to present his claim to the state courts. *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1999). Prejudice is established when a petitioner demonstrates "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)).

A petitioner makes a showing that failure to consider a claim would result in a fundamental miscarriage of justice by demonstrating that he is "actually innocent" of the offense for which he was convicted. *Reed v. Stephens*, 739 F.3d 753, 767 (5th Cir. 2014) (citing *Williams v. Thaler,* 602 F.3d 291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–327 (1995); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004) (fundamental-miscarriage-of-justice exception requires a showing "that a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense.") (quotation omitted). Under *Schlup*, the petitioner must prove that, "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted him." *Bosley v. Cain* 409 F.3d 657, 662 (5th Cir. 2005) (quoting *Schlup*, 513 U.S. at 327-28).

Walker makes no claim and points to no evidence that establishes cause and prejudice, and he fails to show that he is actually innocent of the crime.  Further, the state court found that the video did not contain clearly exculpatory evidence and was not destroyed in bad faith [Doc. # 7-7 at 17].  The state court also found that the jury never saw the portion of the video tape depicting Walker in handcuffs and that Deputy Thompson did not testify to the results of the field sobriety test [Doc. # 7-7 at 17].  The state court's findings are entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).

In any event, Walker is not entitled to habeas relief unless he demonstrates that the trial court's error was harmful.  *See Kittelson v. Dretke*, 426 F.3d 306, 319-320 (5th Cir.  2005) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993)).  This standard prohibits granting of relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Gongora v. Thaler*, 710 F.3d 267, 289 (5th Cir. 2013) (citing *Brecht*, 507 U.S. at 638).   Walker has failed to make any showing that the trial court committed any error that rendered his trial fundamentally unfair.  *See Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).  Therefore, Walker's claim of trial court error is procedurally barred and shall be **dismissed**.  *Morris*, 413 F.3d at 491-492.

### C.    No Showing of Denial of Effective Assistance of Appellate Counsel

Walker alleges that his appellate counsel was ineffective by failing to raise issues on appeal that would afford relief [Doc. # 1 at 7].  Walker does not specify issues that his appellate should or could have raised.  *See Id.*  He only contends that his appellate counsel have access to his trial transcripts and would have known "of objections or the lack thereof." [Doc. # 2 at 8].

Due process guarantees the right to effective assistance of counsel on the first appeal after a conviction.  *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000) (citing *Evitts v. Lucey*, 469 U.S. 387, 392 (1985)).  The standards used to determine whether an attorney has been ineffective in representing his client on appeal are those established in the *Strickland v. Washington* test.  *Smith v. Robbins*, 528 U.S. 259, 28 (2000); *Higgins v. Cain*, 720 F.3d 255, 260-261 (5th Cir. 2013).  A habeas petitioner can only prevail if he shows: (1) his counsel's performance was deficient; and (2) his counsel's deficient performance prejudiced his case.  *Id.* (citing *Strickland*, 466 U.S. at 687).

If the appellate counsel has filed a brief, the petitioner has the burden of identifying non-frivolous issues that are more persuasive than those presented by his attorney on appeal.  *Dorsey v. Stephens*, 720 F.3d 309, 320 (5th Cir. 2013) (citing *Smith*, 528 U.S. at 288).  An attorney is not required to raise every possible ground on

appeal.  *Id.* (citing *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)); *Sharp v. Puckett*, 930 F.2d 450 (5th Cir. 1991); *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989).  It has long been recognized that an appellate advocate should limit his grounds to those which are the most compelling.  *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983) ("[E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.") (quoting Justice Jackson, *Advocacy Before the Supreme Court*, 25 Temple L.Q. 115, 119 (1951)).  An attorney can only be held to be ineffective when it is shown that he failed to raise an argument that is sufficiently meritorious that the attorney should have raised it on appeal.  *Higgins*, 720 F.3d at 265 (citing *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000)).  It must also be shown that there was a substantial likelihood that the outcome of the proceeding would have been different had the argument been raised on appeal.  *Dorsey*, 720 F.3d at 321 (citing *Richter*, 131 S. Ct. at 792).

Having failed to identify any specific issue that his appellate attorney should have but did not raise, Walker has not shown that his attorney's performance was deficient or that his attorney's performance prejudiced his defense.  *See Dorsey*, 720 F.3d at 320.  Walker thus has failed to show that the state court's rejection of the claim was "contrary to, or involved an unreasonable application of, clearly established

Federal law."   28 U.S.C. § 2254(d)(1).   Walker is not entitled to relief on his ineffective assistance of appellate counsel claim.

### D.   Claim of Cumulative Error is Meritless

Walker argues, "The accumulation of errors demands relief." [Doc. # 1 at 7]. This argument has no merit because none of the grounds presented by Walker implicate any constitutional error.  *See Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007).   "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (denying a collective-prejudice argument because "[t]wenty times zero equals zero.").   Walker has failed to assert any facts that demonstrate that he was denied effective assistance of counsel, either at trial or on appeal.   Further, he has not shown any errors of constitutional dimension.   Therefore, the Court cannot find that the state court's denial of the claim was objectively unreasonable. *See Coble*,  496 F.3d at 440.  Walker is not entitled to habeas relief on his claim of cumulative error because he has failed to show that the state court's rejection of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Walker has failed to show that the state courts' adjudication on the merits was contrary to, or involved an unreasonable application of, Supreme Court precedent or that their determination was the product of an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Therefore, Respondent is entitled to summary judgment as a matter of law and the petition must be **dismissed**.

## IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark*, 118 F.3d at 1076 (noting that actions under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not be issued unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 437, 484

(2000)).   Under the controlling standard, a petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."   *Slack*, 529 U.S. at 484.   A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The Court concludes that reasonable jurists would not debate whether the petition should have been resolved in a different manner.   Likewise, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.   Therefore, a certificate of appealability will not issue.

## V.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing, it is hereby **ORDERED** that:

1.      Respondent Stephens' Motion For Summary Judgment [Doc. # 9] is **GRANTED**.

2.      This case is **DISMISSED WITH PREJUDICE**.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

A final judgment will be issued separately.

SIGNED at Houston, Texas, this **24**th day of **March, 2015**.


Nancy F. Atlas
United States District Judge